**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CARLOS TREVIZO,

       Plaintiff,

CARLOS PEREZ, MARIA DEL
CARMEN CRUZ, CARMELO CRUZ,
LAURENTINO RODRIGUEZ,
ASHLEY RODRIGUEZ, SYLVIA
RODRIGUEZ, GLORIA E.
VILLALOBOS, PEDRO CAMPOS,
JIVERTO BAPTISTA, and ROGELIO
GOMEZ, for themselves and on behalf
of all others similarly situated,

       Plaintiffs-Appellants/
       Cross-Appellees,

   v.

ROBE ADAMS, personally and in his
capacity as a Salt Lake City Police
Officer,

       Defendant,

SALT LAKE CITY CORPORATION,
DEE DEE CORRADINI, personally
and in her capacity as Mayor of Salt
Lake City, RUBEN ORTEGA,
personally and in his capacity as
Police Chief of Salt Lake City,
MELODY GRAY, personally and in
her capacity as a Bountiful City Police
Officer, RUSSELL AMOTT, JAMES
BLOOMER, AMY DESPAIN, TIM

Nos. 05-4098 and 05-4110

DOUBT, WANDA GABBETAS, CRAIG GLEASON, GREG HAGELBERG, MARTY KAUFMAN, PHIL KIRK, JOHN RITCHIE, MICHAEL ROSS, MORGAN SAYES, TROY SIEBERT, CHAD STEED, and MARTY VUYK, personally and in their capacities as Salt Lake City Police Officers,

Defendants-Appellees/
Cross-Appellants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 99-CV-147-PGC)**

---

Dale F. Gardiner, Parry Anderson & Gardiner, Salt Lake City, Utah for Plaintiffs-Appellants/Cross-Appellees.

Morris O Haggerty, Senior City Attorney, Salt Lake City Attorney's Office, Salt Lake City, Utah for Defendants-Appellees/Cross-Appellants.

---

Before **KELLY**, **TYMKOVICH**, Circuit Judges and **EAGAN**, District Judge.[*]

---

**TYMKOVICH**, Circuit Judge.

---

This appeal arises out of a § 1983 action filed against Salt Lake City and various individual law enforcement officers. The plaintiffs were owners,

[*] Honorable Claire V. Eagan, Chief District Court Judge, Northern District of Oklahoma.

-2-

employees, and customers of Panaderia La Diana, a Latino-owned business that served as a combination restaurant, tortilla factory, and bakery in Salt Lake City. The civil rights claims arise from the manner in which police executed a search warrant of Panaderia La Diana in 1997. Thirty-three individuals initially filed suit alleging gross improprieties from the SWAT-style police raid. They also sought class action certification on behalf of the remaining individuals who were subjected to the raid but failed to file suit.

After numerous pretrial delays, the district court issued a lengthy summary judgment order in 2004, which completely disposed of the case as to ten of the plaintiffs and partially disposed of the case as to the remaining plaintiffs. This appeal involves the ten plaintiffs against whom complete summary judgment was issued. They contest the district court's decision to dismiss their claims and also challenge its prior denial of their motion for class certification.

Having jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM the decisions below.

## I. Factual and Procedural Background

Prior to the events that gave rise to this case, Panaderia La Diana had been placed under surveillance by law enforcement due to numerous reports of drug sales on the premises. As part of their investigation, undercover police purchased cocaine and heroine from eight different persons in the parking lot and purchased

the prescription drug Darvon from an employee inside the restaurant. The police also obtained information about potential firearms located on the premises.

At mid-afternoon on April 24, 1997, Salt Lake City police, in conjunction with officers from other agencies, executed a search warrant at Panaderia La Diana, seeking evidence of the purported drug activity occurring on the property. The warrant was executed pursuant to high risk procedure and, throughout the course of the search, at least forty-seven SWAT members and other law enforcement officers detained approximately eighty people. Six people were initially arrested, including the employee who had previously sold Darvon to an undercover officer. However, the search produced no new evidence of illegal activity, and the charges were later dropped.

Nearly two years later, on March 8, 1999, thirty-three of the persons detained by law enforcement joined in filing suit under 42 U.S.C. § 1983 against Salt Lake City and individual police officers involved in the raid.[1] The plaintiffs claimed they suffered maltreatment at the hands of law enforcement officers and alleged a litany of horrific facts to support their claims. The allegations, which were set out at length in the district court's thorough opinion, *see Panaderia La Diana, Inc. v. Salt Lake City Corp.*, 342 F. Supp. 2d 1013, 1016–29 (D. Utah 2004), describe a wide range of physical and verbal abuse of persons at the scene, including pregnant women and children.

---

[1] We refer to these defendants collectively as "the City."

On July 22, 2004, over five years after the plaintiffs filed suit, the City noticed depositions for a number of plaintiffs for July 30, the last day of the discovery period. On that date, for reasons that are disputed by the parties, the following ten noticed plaintiffs failed to appear at the appointed place: Carlos Perez, Maria Del Carmen Cruz, Carmelo Cruz, Laurentino Rodriguez, Ashley Rodriguez, Silvia Rodriguez, Gloria E. Villalobos, Pedro Campos, Jiverto Baptista, and Rogelio Gomez. These plaintiffs were therefore never deposed.

After discovery was closed but before the motions deadline had passed, the plaintiffs moved for certification as a class action pursuant to Federal Rule of Civil Procedure 23. In addition, the City moved for summary judgment pursuant to Rule 56. The court denied the plaintiffs' request for class certification and granted summary judgment against the ten plaintiffs who failed to appear at their own depositions.[2]

These ten plaintiffs appeal the judgment entered against them as well as the denial of class certification. The City cross-appeals the certification issue.

## II. Discussion

### A. Summary Judgment Against Plaintiffs

When a party moves for summary judgment, it will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file,

___

[2] As noted above, the court also entered summary judgment against the remaining plaintiffs on certain claims. These plaintiffs did not appeal the decision and settled their remaining claims.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Plaintiffs seeking to overcome a motion for summary judgment may not "rest on mere allegations" in their complaint but must "set forth *specific* facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added); *see Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 902 (1990) ("[C]onclusory allegations unsupported by specific evidence will be insufficient to establish a genuine issue of fact.") (internal quotations omitted).

This does not mean that evidence must be submitted "in a form that would be admissible at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Indeed, parties may submit affidavits even though affidavits are often inadmissible hearsay at trial on the theory that the same facts may ultimately be presented at trial in an admissible form. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). However, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury" in some form. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, No. 05-3114, 2006 WL 1806605, at * 5 (10th Cir. July 3, 2006) (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1216 (10th Cir. 2004) (affirming summary judgment, in light of the available evidence, because "[j]ury verdicts may not be based on speculation or inadmissible evidence or be contrary to uncontested admissible evidence")).

Having reviewed this issue de novo and applied the same standard as the district court, *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 714 (10th Cir. 2005), we come to the same conclusion—that these plaintiffs failed to "put forward any evidence in their favor" that satisfies these standards, *Panaderia*, 342 F. Supp. 2d at 1030. Absent deposition testimony or other competent evidence of what occurred, it was incumbent upon these plaintiffs to provide—at the very least—affidavits detailing what happened to them. None of these ten plaintiffs did so. Nor, after the district court's decision alerted them to their deficiencies, did they ask the court to reconsider its ruling and, at that time, seek to supplement the record.

As it is, the plaintiffs can only argue on appeal that (1) the City never contested their *presence* at Panaderia La Diana, and (2) other previously joined plaintiffs (who had provided deposition testimony to support their own claims) made sweeping statements about the group as a whole. However, neither physical presence on the premises, nor vague, generalized statements from others suggesting that "pretty much everyone was treated the same way," Applt. Appx. at 360, is sufficient to constitute "specific facts showing there is a genuine issue for trial as to the essential elements" of these plaintiffs' claims. *See Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1156 (10th Cir. 1994). The record is particularly deficient considering the plaintiffs had over five years to

prepare their case, and summary judgment was granted only one month before the scheduled trial in the matter.

Because these plaintiffs failed to meet the requirements of Rule 56, summary judgment is appropriate. We therefore uphold the district court's decision.[3]

## B. Denial of Plaintiffs' Motion for Class Certification

Plaintiffs also appeal on behalf of other potential claimants who were at the restaurant during the raid but did not join the lawsuit, arguing the district court should have certified their case as a class action. The district court initially denied certification on the ground of untimeliness. Subsequently, however, the court amended its prior order and denied certification based on the plaintiffs' failure to meet two elements set forth in Rule 23—numerosity and commonality.

"Whether the district court applied the correct legal standard in its decision to grant or deny class certification is reviewed de novo." *Shook v. El Paso County*, 386 F.3d 963, 967 (10th Cir. 2004). However, "[w]hen the district court has applied the proper standard in deciding whether to certify a class, we may reverse that decision only for an abuse of discretion." *Id*.

---

[3] Because we affirm on this ground, we need not reach the district court's alternative reason for dismissing these plaintiffs' case—that default judgment was warranted as a Rule 37 sanction for failure to appear at their scheduled depositions.

### 1. Timeliness

This lawsuit had been pending for five years before the plaintiffs moved for class certification. They filed at the latest possible opportunity—the final day of the motions period. At that point, discovery had already closed and a two-week jury trial was just over two months away. Because granting certification at that point would have resulted in extending the motions period, reopening discovery, and rescheduling trial, the district court rejected the motion for untimeliness, finding it to be unfair to the defense and impracticable for the court. The court based its decision on Federal Rule of Civil Procedure 23(c)(1), which states, "When a person sues or is sued as a representative of a class, the court *must—at an early practicable time*—determine by order whether to certify the action as a class action." (emphasis added).

Subsequently, however, realizing that this circuit interprets Rule 23(c)(1) to require the trial court to "take up class action status" in a timely manner *"whether requested to do so or not by a party or parties*, where it is an element of the case." *Horn v. Assoc. Wholesale Grocers, Inc.*, 555 F.2d 270, 274 (10th Cir. 1977) (emphasis added), the district court amended its order and provided additional reasoning on the merits of the certification request. In its revised order, the district court concluded Rule 23(c)(1) was not intended to create a basis for automatic denial of a party's request for class certification.

We agree with the district court on this point. As we explained in *Horn*, Rule 23(c)(1) places the onus on the court to make a determination irrespective of whether the parties have requested class action status. Therefore, it does not create an independent basis for denying a party's motion. Nor do the 2003 amendments to this Rule alter our analysis. Neither the language itself, which was changed from "as soon as practicable" to "at an early practical time," nor the accompanying Advisory Committee Notes provide a reason to disturb our precedent on this issue.[4] Accordingly, we turn to the district court's subsequent evaluation of the plaintiffs' request based on the requirements specifically set forth in Rule 23.

## 2. Prerequisites to Class Certification

A class may be certified only if all four of the following prerequisites are met:

(1) Numerosity: "the class is so numerous that joinder of all members is impracticable";

---

[4] The City also argues that, even if Rule 23(c)(1) does not create an independent basis for denying a party's motion, timeliness nonetheless remains relevant under the court's determination of whether the representative parties will adequately represent the interests of the class pursuant to Rule 23(a)(4). The Supreme Court has recognized that plaintiffs' failure to move for class certification *prior to trial* is a strong indication they would not "fairly and adequately protect the interests of the class." *E. Tex. Motor Freight Sys., Inc. v. Rodriquez*, 431 U.S. 395, 404–05 (1977). Because we do not reach the issue of Rule 23(a)(4)'s application (see below), we need not consider whether to extend the *Rodriguez* logic to the facts of this case.

(2) Commonality: "there are questions of law or fact that are common to the class";

(3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) Adequacy of representation: "the representative parties will fairly and adequately represent the interests of the class."

Fed. R. Civ. P. 23(a). A party seeking class certification must show "under a strict burden of proof" that all four requirements are clearly met. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

In its amended order, the district court denied the motion based on the first and second elements—numerosity and commonality. The plaintiffs challenge the court's determination on each of these elements.

*Numerosity.* In order to meet this element, "[t]he burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976). Here, the district court concluded that, although the number of putative class members—eighty-four—was not insignificant, it was not such an overwhelmingly large number as to be prohibitive of joinder. Nor was there any problem locating the remaining individuals for joinder since all the names and addresses of potential plaintiffs had been provided during discovery.

The plaintiffs argue that the district court should have followed cases from other jurisdictions which hold numerosity may be presumed at a certain number.

*See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (presuming numerosity at forty members); *see also Polich v. Burlington Northern, Inc.*, 116 F.R.D. 258, 261 (D. Mont. 1987) (finding sixty potential members sufficient to support a presumption that joinder was not practicable). Our circuit has never adopted such a presumption. To the contrary, we have specifically stated there is "no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). Indeed, because it is such a fact-specific inquiry, we grant wide latitude to the district court in making this determination. *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1498 (10th Cir. 1992). Here, the district court carefully reviewed the record and made an appropriate judgment call. We therefore find no abuse of discretion.

Plaintiffs argue in the alternative that joinder would be impracticable in their case based on the unique circumstances of the putative class. According to the current plaintiffs, the remaining potential class members may be deterred from joining the litigation as named plaintiffs because (1) their English was limited, and (2) they were fearful of the legal system. The district court found this argument unpersuasive, noting that many of the named plaintiffs also spoke little or no English, yet they had managed to file claims. Further, the court found the plaintiffs had failed to demonstrate any factual basis for concluding the remaining individuals were deterred from filing claims based on some unique fear of the

legal system. The only indication submitted was a vague and conclusory affidavit by one plaintiff that purported to describe the motives of others. The district court found the solitary affidavit inadequate to support the serious allegations underlying the argument, especially since the plaintiffs had access to the other individuals yet took no steps to obtain specific facts relevant to their reasons for not suing the City. In any event, even if the class were certified, the remaining individuals would eventually have had to come forward to join the class irrespective of their views about the judicial process.

In sum, we cannot conclude the district court abused its discretion in finding that joinder was practical and that the potential class members could have filed individual claims against the City.

***Commonality.*** In the principal case on Rule 23(a) commonality, *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 156 (1982), the Supreme Court held members of a putative class must "possess the same interest and suffer the same injury." In that case, the Supreme Court denied class certification to a group of Mexican-Americans pursuing similar Title VII claims on the basis that they had failed to provide a "specific presentation identifying the questions of law or fact that were common." *Id.* at 158. The Court emphasized the necessity of rigorous analysis by the district court before granting class certification because of the "potential unfairness to the class members bound by the judgment if the framing of the class is overbroad." *Id.* at 161.

-13-

"The district court retains discretion to determine commonality because it is 'in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and . . . to select the most efficient method for their resolution.'" *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (quoting *Boughton v. Cotter Corp.*, 65 F.3d 823, 825 (10th Cir. 1995). "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations.'" *Monreal v. Potter*, 367 F.3d 1224, 1238 (10th Cir. 2004) (quoting *Reed*, 849 F.2d at 1309 (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402–03, 406 n.11 (1980))).

Here, in examining the facts of the case, the district court determined the plaintiffs presented "divergent fact patterns which ma[d]e this case inappropriate for class action status." Dist. Ct. Order, Nov. 2, 2004, at 5. Specifically, the court observed,

> The jury's determination of reasonableness [which is central to these plaintiffs' claims] will rely on numerous factors which differ significantly as to many plaintiffs such as (1) how long the plaintiffs were detained; (2) where the plaintiffs were detained; (3) whether the plaintiff is an owner, employer, customer, or bystander, and (4) the degree of force used with each plaintiff, among many others. It seems clear to the court that the jury may award damages to some of the plaintiffs but find that others are not entitled to damages.

*Id*.

In light of the district court's thorough examination of the relevant facts, and acknowledging the court's broad discretion in assessing commonality, we conclude it did not abuse its discretion in determining the essential element of commonality was not met.[5]

### III. Conclusion

For the foregoing reasons, we AFFIRM the decisions below.

---

[5] The City also argues the district court should have denied certification on the fourth element—adequacy of representation. Because we hold the district court did not abuse its discretion in denying class certification based on numerosity and commonality, and because either or both of those elements are sufficient to support its decision, we need not explore additional reasons not relied upon below.