2009 OK 67

**CACTUS PETROLEUM CORPORATION, on its own behalf and on behalf of all others similarly situated, Plaintiffs/Appellees,**

v.

**CHESAPEAKE OPERATING, INC., and Chesapeake Energy Corporation, Defendants/Appellees,**

**Camelback, L.P. and Nancy A. Puckett, Objectors/Appellants.**

No. 102,588.

Supreme Court of Oklahoma.

Sept. 22, 2009.

As Corrected Oct. 9, 2009.

Rehearing Denied Nov. 10, 2009.

Kandi Jepsen Pate and Mark A. Wolfe, Pate & Wolfe, Oklahoma City, OK, Cody Hodgden, Hodgden, Hallren, Smithton & Hodgden, P.L.L.C., Woodward, OK, and Charles Watson, Jr., Charles D. Watson, Jr. L.L.C., for Plaintiffs/Appellees, Cactus Petroleum Corporation, and the Settlement Class.

Fred R. Gipson, Robert N. Barnes, Patranell Britten, Lewis, Barnes & Lewis, P.C., Oklahoma City, OK, for Defendants/Appellees, Chesapeake Operating, Inc., and Chesapeake Energy Corporation.

Gregory L. Mahaffey, Travis R. Brown, Mahaffey & Gore, P.C., Oklahoma City, OK, and Terry W. West and Bradley C. West, the West Law Firm, Shawnee, OK, Tom C. McCall, Austin, TX, and Britton D. Monts, Dallas, TX, for Objectors/Appellants.

REIF, J.

¶ 1 The issues presented on certiorari review are whether the trial court erred (1) in certifying a class of working interest owners, and (2) in approving the proposed settlement agreement over the objections of two working interest owners. The objectors challenged the class certification, alleging that the class was not a cohesive group because the objectors did not sign a marketing election letter agreeing to the marketing fees. According to the objectors, the class representative could not adequately represent their interests because the class representative had signed an election letter agreeing to the marketing fees. The objectors challenged the settlement, as approved, on the ground that it allocates zero recovery to the fixed-percentage marketing fee claims and extinguishes these claims for all class members. Applying a strict scrutiny standard of review, the Court of Civil Appeals reversed.

Upon certiorari, we hold the proper standard of review is the deferential abuse of discretion standard [1] and conclude the trial court did not abuse its discretion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶ 2 On April 8, 2004, Cactus Petroleum Corporation, as the class representative of working interest owners under joint operating agreements, brought suit against the operator, Chesapeake Operating, Inc., and its affiliated marketing corporation, Chesapeake Energy Corporation, a wholly-owned subsidiary of Chesapeake Operating. The class of working interest owners alleged that operator Chesapeake (1) improperly billed for certain well costs, and (2) failed to properly account to working interest owners for the market value of production while marketing production through its affiliated marketing company, Chesapeake Energy.

¶ 3 The marketing fee claims include components based on a price differential, and on a fixed price marketing fee. The price differential claims concern the operator's retention of a price differential on the sale of hydrocarbons in addition to the agreed marketing fees. The fixed fee claims concern the operator's charges of fixed marketing fees in the amount of 2%, and later 3%, against the working interest owner's share of production. These fees were paid to Chesapeake's affiliated marketing company, Chesapeake Energy.

¶ 4 After lengthy negotiations, the parties sought preliminary court approval for a mediated settlement agreement providing for payment of $4.5 million to resolve the issue of improper billing for well costs, and $2 million to resolve the marketing fee claims. The court ordered that notice of the proposed settlement be mailed to the class advising them of the material terms of the settlement, and of their rights as members of the settlement class. The notice also advised prospective class members that if they wished to be excluded from the settlement, they were to file a request for exclusion, or "opt-out."

---

1. *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 5, 81 P.3d 618, 622, cert. den. *DaimlerChrysler Corp. v. Ysbrand*, 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004); *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, ¶ 10, 969 P.2d 337, 342.

The notice further advised class members that if they wished to object to final approval of the settlement, they could file written objection with the court clerk.

¶ 5 Two of the prospective class members, Camelback, L.P. and Nancy A. Puckett, filed written objections, contesting the marketing fees portion of the settlement on the grounds that the fixed fee claims had substantial merit.[2] At the two-day fairness hearing, the objectors never personally appeared in court, and counsel for the objectors presented no witnesses or evidence in support of their objections to the proposed settlement. The class counsel presented various expert witnesses, exhibits, affidavits, summaries and charts. Following the fairness hearing, the trial court found that the terms of the settlement agreement were fair, reasonable, and adequate, and denied the objections. The court found that the requirements of 12 O.S.2001 § 2023 were satisfied, and certified the case as a class action, with the settlement class consisting of over 5,000 working interest owners who were parties to a joint operating agreement in wells operated by Chesapeake. The trial court approved the settlement proposal, providing $4.5 million for the operator having improperly billed the working interest owners for certain well costs, and $2 million allocated to the marketing fee claims. The marketing fee settlement represented approximately 115% of the total price differential claim.

¶ 6 The two objectors appealed, contesting the marketing fee portion of the settlement, but not the well cost portion. On appeal, the objectors alleged that the entire amount of the $2 million allocated to the marketing fee claims was for the price differential portion of the marketing fee claims, and that no part of the recovery was for the fixed-percentage marketing fees. They asserted that the fixed-percentage claims were worth approximately $20 million. Objectors maintain that the class representative did not adequately represent the class with respect to the fixed percentage claims, inasmuch as the fixed percentage claims were extinguished by the settlement for all class members without providing any recovery on the fixed fee claims.

¶ 7 The objectors also stated that the court erred in certifying the class because the membership was not readily ascertainable. The objectors stated that the class representative did not adequately represent their interests with respect to the fixed percentage marketing fee claims because the representative had signed a marketing election letter consenting to the fees. The objectors asserted that there is a conflict of interest between those members of the class who had previously agreed to the fixed percentage marketing fees, and those class members, such as the objectors, who had not signed marketing election letters, and had not consented to the fees.[3]

¶ 8 The trial court found that all the requirements of section 2023 had been satisfied,[4] and that no evidence was presented at

**2.** Written objections were also filed by seven other prospective class members, but it was subsequently determined that some were not working interest owners or parties to the joint operating agreements, and were not members of the settlement class. The trial court therefore determined that they had no standing to object to the settlement. The other filed written objections pertained solely to the issue of the settlement agreement lacking any provision for injunctive relief. The court specifically overruled these objections, finding no need for injunctive relief.

**3.** In their written objections, objectors alleged that there was inadequate representation and that the class was not a cohesive group due to the existence within the class of four different groups, including (1) members charged with both well costs and marketing fees; (2) members charged with marketing fees only; (3) members charged with well costs only; and (4) members

charged with neither marketing fees nor well costs.

**4.** The trial court did not specifically address any of the requisite elements from section 2023(B). The Court of Civil Appeals observed that the objectors' appeal did not challenge certification based on the elements of section 2023(B), and found that the trial court is presumed to have found every special thing necessary to be found to sustain the general finding and conclusion that the requirements of section 2023 were satisfied, citing *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, ¶ 13, 9 P.3d 683, 688–90. We have independently reviewed the record and determined that evidence supports a finding that there was a risk of inconsistent adjudications by separate actions under section 2023(B)(1), and a predominance of common questions of law or fact to class members and superiority of class action adjudication under section 2023(B)(3).

the fairness hearing to support the objectors' assertions that the class was not cohesive, that there were intra-class conflicts, and that the class representative was not typical and could not adequately represent the class.[5]

¶ 9 Applying a strict scrutiny standard of review, the Court of Civil Appeals reversed the trial court's decision,[6] finding that an intra-class conflict existed because plaintiffs had previously agreed to the fixed percent marketing fees by signing marketing election letters, preventing the plaintiffs "from having the same interest and same injury" as those working interest owners who did not sign marketing agreements. The Court of Civil Appeals was also persuaded by the testimony of an oil and gas consultant who stated that the $2 million allocation accounted for 115% of the price differential part of the claim, but that no value was allocated to the 2% fixed percentage marketing fee. For the reasons that follow, we hold the Court of Civil Appeals erred in its review and reversal of the trial court, and vacate the opinion of the Court of Civil Appeals.

## REVIEWED UNDER THE DEFERENTIAL ABUSE OF DISCRETION STANDARD, THE TRIAL COURT DID NOT ERR IN CERTIFYING THE CLASS OR APPROVING THE SETTLEMENT

■ ¶ 10 Class action lawsuits are governed by 12 O.S.2001 § 2023.[7] A class may

---

5. In its findings of fact, the trial court indicated that these arguments were based on a misconception that some class members were charged neither well costs nor marketing fees. The court observed that every class member was charged marketing fees or well costs, or both. The class representative was charged both marketing fees and well costs. The court also noted that a substantial portion of Puckett's written objection was based on the issue of the release of future claims. The court found that the class members were not releasing any claims against the operator which could arise or accrue after August 9, 2004, with respect to the marketing fee claims, and after December 31, 2004, with respect to the well cost claims. The trial court found that a plain reading of the settlement documents revealed that future claims accruing after the release date were not released.

6. In addition to merits of the class certification and approval of the settlement, the Court of Civil Appeals was called upon to decide whether the objectors had standing to appeal. At the outset of objectors' appeal, the class representative raised an issue regarding the objectors' right to appeal the trial court's ruling. The class representative argued the appeal should be dismissed because the objectors lacked standing since they failed to intervene in the action prior to their appearance at the fairness hearing. However, in *Devlin v. Scardelletti*, 536 U.S. 1, 2, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002), the U.S. Supreme Court ruled that in class action lawsuits, unnamed class members may appeal, without first intervening, as long as they objected in a timely manner to approval of a class action settlement at the fairness hearing. An unnamed class member who does not opt out of a settlement but objects at the fairness hearing, and against whom a final judgment is entered, is a party with the right to appeal the district court's approval of the settlement. *See id.; Integra Realty Resources, Inc. v. Fidelity Capital Appreciation Fund*, 354 F.3d 1246, 1257 (10th Cir.2004). The Court of Civil Appeals properly determined that the objectors, as unnamed class members who timely objected to the class settlement at the fairness hearing, were entitled to appeal without first intervening.

7. Title 12 O.S.2001 § 2023 provides, in pertinent part, as follows:

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
    1. The class is so numerous that joinder of all members is impracticable;
    2. There are questions of law or fact common to the class;
    3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    4. The representative parties will fairly and adequately protect the interests of the class.
B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:
    1. The prosecution of separate actions by or against individual members of the class would create a risk of:
    a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
    b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
    2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

be certified when it satisfies the four requirements of section 2023(A) and one of the requirements of section 2023(B). *Burgess v. Farmers Ins. Co.*, 2006 OK 66, ¶ 10, 151 P.3d 92, 98. "Subsections 1 through 4 of § 2023(A), respectively, require: 1) numerosity of class members; 2) commonality of questions of law or fact; 3) typicality of claims or defenses of the class representatives with the class; and 4) adequacy of representative parties to protect class interests." *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 8, 164 P.3d 1028, 1032. Subsections 1 through 3 of § 2023(B) require "either: 1) a risk of inconsistent adjudications by separate actions or substantial impairment of non-parties to protect their interests; 2) appropriateness of final injunctive or declaratory relief; or 3) predominance of common questions of law or fact to class members and superiority of class action adjudication." *Id.* The party seeking certification has the burden of establishing each of the requisite elements. *Id.* at ¶ 10, 164 P.3d at 1032.

■■■ ¶ 11 With respect to the adequacy of the representation element, a class representative must have the same interest and suffer the same injury as the prospective class members. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, the fact that a class representative does not have certain claims, or that a defendant has a defense unique to the class representative's claim, does not, by itself, defeat the adequacy of representation element. *See Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, 969 P.2d 337. Typicality does not require that all of the class members have identical claims.[8] If the claims arise from a similar course of conduct by the defendant and share the same legal theory, factual differences in the claims of the class members will not defeat typicality.[9]

■■■ ¶ 12 A trial court's class certification order is reviewed for abuse of discretion. *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 8, 195 P.3d 48. "An abuse of discretion occurs when the court's decision is based on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling."[10] "[T]he issue on appeal is not whether the trial court could have certified a class but whether it was an abuse of discretion not to certify." *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir.1995).[11] "If the record does not demonstrate that the requisites for class action have been met, the trial court has abused it[s] discretion." *Harvell*, 2006 OK 24, ¶ 9, 164 P.3d at 1032 (footnote omitted).

■■ ¶ 13 We do not need to reach the merits of the claim to determine whether the prerequisites for class-certification were met. *Id.* at ¶ 11, 164 P.3d at 1032–33. "Neverthe-

---

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: a. the interest of members of the class in individually controlling the prosecution or defense of separate actions, b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and d. the difficulties likely to be encountered in the management of a class action.

8. *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3rd Cir.2001) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3rd Cir.2001)). Oklahoma's class action statute, § 2023, closely parallels Rule 23 of the Federal Rules of Civil Procedure. The Court may therefore look to federal authority for guidance regarding the interpretation of § 2023. *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, ¶ 9, 9 P.3d 683, 688.

9. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir.2002); *see Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982).

10. *Fent v. Oklahoma Natural Gas Co.*, 2001 OK 35, ¶ 12, 27 P.3d 477, 480–81; *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, ¶ 9, 9 P.3d 683, 688.

11. Oklahoma's class action provision closely parallels the scheme in the Federal Rules of Civil Procedure, and we therefore look to federal authority for guidance regarding its rationale. *KMC Leasing*, 2000 OK 51, ¶ 10, 9 P.3d at 688; *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 5, 689 P.2d 299, 301.

less, determining whether the trial court applied the correct legal standards when it assessed § 2023's requirements for class certification necessitates identification and review of the core liability issues asserted by the class." *Id.* (footnote omitted).

¶ 14 The contested issues in this case regarding class certification concern the commonality of questions of law or fact; the typicality of claims or defenses of the class representatives with the class; and the adequacy of representative parties to protect class interests, under § 2023(A)(2)(3) and(4). These issues are based primarily on the fact that the class representative signed marketing agreements and consented to the marketing fees. Objectors believe this fact demonstrates the representative did not have the same interest in the marketing fee claims, or the same injury, as those working interest owners who did not agree to the fees by signing marketing agreements. For this reason, the objectors argue that the representative did not adequately pursue the fee claims, with the result that the proposed settlement did not include any recovery for the marketing fee claims.

¶ 15 The trial court found this argument unpersuasive because the evidence established that the marketing fee claims were not pursued because they lacked merit, and not because the class representative did not have a similar interest or injury. Since working interest owners must also pay reasonable marketing fees if they do not separately dispose of their proportionate share of oil and gas, there is no injury where the marketing fees are reasonable and customary in the industry. The trial court's determination that the class representative did not pursue the marketing fee claims because they were

without merit is supported by the evidence and law.

¶ 16 In *McCall v. Chesapeake Energy Corp.*, 2007 OK CIV APP 59, 164 P.3d 1120 (approved for publication by the Supreme Court), the court resolved a dispute regarding the amount of fees that could be properly deducted from a share of production under Chesapeake Operating Inc.'s gas purchase contract with Chesapeake Energy Marketing, Inc. The marketing agent, Chesapeake Energy Marketing, Inc., deducted a fixed 3% marketing fee from the net resale price for its services related to gas sales. The court found no error in the trial court's determination that a non-operating working interest owner "was obligated to bear her proportionate share of the 3% marketing fee payable under Chesapeake Operating's contract with the purchaser of the gas, CEMI." *Id.* at ¶ 25, 164 P.3d at 1126. The 3% marketing fee was determined to be reasonable.

¶ 17 In the present case, the trial court reviewed the joint operating agreements, and found that the lessees were obligated to pay their share of marketing expenses if they did not take in kind or separately dispose of their proportionate share of oil and gas pursuant to the joint operating agreement.[12] The court found, based on expert testimony, that the deduction for marketing fees of 2%, and later 3%, of the net wellhead price was customary and reasonable in the industry.[13] The fact that Chesapeake Operating marketed the gas through Chesapeake Energy, a wholly-owned subsidiary, is not improper per se because these are separate entities and the marketing fee was customary and reasonable.

¶ 18 The court found that out of 12,575 notices mailed, only 98 opt-outs (less than 1%) were filed.[14] The court also stated that the number of objections to the settlement

12. The joint operating agreement provides that each party shall take in kind or separately dispose of its proportionate share of all oil and gas produced from the contract area, and that the operator shall have the right, but not the obligation, to purchase or market hydrocarbons belonging to other owners.

13. The court found, based on a gas marketing expert's testimony, that since deregulation, it was the standard industry practice for operators or their marketing agents to charge a marketing fee

ranging from 2% to 5% during the applicable time period of 1995–2005.

14. The notices informed the class members that they had three options: (1) approve the proposed class by doing nothing; (2) opt out of the settlement class in writing on or before May 6, 2005; or (3) remain a member of the settlement class but object to the proposed class settlement or to class counsel's request for attorney's fees, the class representative's award, expert and consulting fees, and other litigation expenses.

were few, and the interests they represented were minuscule. Puckett and Camelback were the only class members who objected to the adequacy of the marketing fee portion of the settlement, and their interests represented only .0019558% of the marketing fee claims. Therefore, 100% of the class endorsed the well cost portion of the settlement,[15] and 99.99804% of the class had no objection to the marketing fee settlement.

¶ 19 The court also found that the amount of the overall recovery was reasonable. The evidence supports a finding that the release language was unambiguous and narrow in scope, and that the recovery of approximately 70% on the well costs claims, and approximately 115% of the total price differential on the marketing fee claims, was an excellent recovery. Moreover, the class representative's failure to pursue the fixed fee claims was appropriate where the evidence shows that the fees were reasonable and customary, and that the pursuit of such claims would result in substantial litigation costs and risks without reasonable prospects of obtaining a recovery.

¶ 20 We find nothing in the record that shows either the class certification ruling or the settlement approval involved "an erroneous conclusion of law or [had] no rational basis in the evidence," which is the proper focus of appellate review under the abuse of discretion standard. We likewise find nothing in the record that would warrant the Court of Civil Appeals' assessment of abuse of discretion under the heightened, non-deferential standard set forth in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Unlike the case at hand, *Amchem* was a mass tort case involving possibly millions of plaintiffs with diverse medical conditions, which was submitted for settlement approval on the same day as its filing.

¶ 21 The *Amchem* court examined the legislative history of the class action procedure, and stated that mass tort cases involving parties with diverse medical conditions are ordinarily not appropriate for class treatment. *Id.* at 594, 117 S.Ct. 2231. Also, in

*Amchem,* the court considered a heightened standard appropriate since the case was submitted for settlement approval on the same day as its filing, and the parties to the settlement never intended to litigate.

¶ 22 The present case is clearly distinguishable. The evidence demonstrated that the operator was entitled to charge a fee for its marketing services and that the fee was reasonable. The evidence also showed that those class members who did not sign marketing agreements consenting to the fees, had no better claim to recover the fixed marketing fees than the class representative and other class members who did sign the marketing agreements. The class members who did not sign the marketing agreements did not have a meritorious claim to recover the fixed marketing fees, and the distinction between the members of the class who signed marketing agreements and those who did not is without legal significance.

¶ 23 The evidence supports the trial court's findings that the class representative could fairly and adequately represent the class; that there were questions of law and fact common to each class member; and that the claims of the representative parties were typical of the claims of the class. A review of the record indicates that the trial court's class certification order and approval of proposed settlement are supported by substantial evidence in the record, and that the objectors' claims are unsupported by law.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.**

¶ 24 EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, WINCHESTER, COLBERT, and REIF, JJ., concur.

¶ 25 OPALA and WATT, JJ., concur in part; dissent in part.

¶ 26 KAUGER, J., recused.

---

15. The recovery on the well cost claim in the settlement exceeded 70% of the alleged improper well costs billed to the class.