2008 OK CIV APP 112

**NEW DOMINION, L.L.C.,**
Applicant/Appellee,

v.

**PARKS FAMILY COMPANY, L.L.C.,**
Respondent/Appellant.

No. 105,309.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Sept. 18, 2008.

Certiorari Denied Dec. 15, 2008.

J. Fred Gist, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, OK, and J. Kevin Hayes, Pamela S. Anderson, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for Applicant/Appellee.

Kandi Jepsen Pate, Mark A. Wolfe, Pate & Wolfe, Oklahoma City, OK, for Respondent/Appellant.

Benjamin B. Jackson, Office of the General Counsel, Michele Craig, Office of the General Counsel, Oklahoma Corporation Commission, Oklahoma City, OK, for the Oklahoma Corporation Commission.[1]

KENNETH L. BUETTNER, Presiding Judge.

¶1 On July 27, 2006, Applicant/Appellee New Dominion L.L.C. (New Dominion) filed an Application to Clarify Pooling Orders in the Oklahoma Corporation Commission (Commission) with respect to eleven pooling orders relating to completed and producing oil and/or gas wells in Pottawatomie, Lincoln, and Seminole Counties. New Dominion alleged that owners of the interests had failed to elect and were therefore deemed to have elected "$60 per acre, plus the normal 1/8 royalty interest as defined in 52 O.S. Section 87.1(e)(1977)". New Dominion specifically claimed that there was a controversy as to the requirement in the pooling orders of the payment and meaning of 1/8 royalty and requested clarification to reflect that New Dominion had complied with the pooling orders by payment of royalties upon the proceeds actually received. The Commission found it had jurisdiction and held that the phrase "1/8 royalty interest" permits deduction of post production costs. We affirm.

¶2 Respondent/Appellant Parks Family Company, L.L.C. (Parks Family) filed a Motion to Dismiss the Application for Clarification for Lack of Jurisdiction April 19, 2007, on the ground that the matter involved private rights and that New Dominion's Application was motivated as a litigation strategy because of its status as the defendant in pending litigation.[2] New Dominion filed a Response April 25, 2007, stating that Parks Family's Motion to Dismiss (1) was untimely,

1. Supreme Court Rule 1.90(b) states: A copy of all instruments and briefs filed in this Court shall be mailed to the Attorney General and to the Corporation Commission. The Oklahoma Corporation Commission filed an Answer Brief in support of its Order.

2. Rec. 481. *Parks Family Company, L.L.C., individually and on behalf of all others similarly situated, Plaintiff, v. New Dominion, L.L.C., Defendant,* District Court of Okfuskee County, Oklahoma, Case No. CJ–06–128.

(2) that valuation under the force-pooling order had to be ascertained before entitlement to proceeds could be determined, (3) the Commission had exclusive jurisdiction to clarify it own orders, and (4) the implied covenant to market does not govern payment obligations under force-pooling orders.

¶ 3 After hearing, the Report of the Administrative Law Judge was filed June 12, 2007. The ALJ concluded that the Commission had subject matter jurisdiction to determine the issue and exclusive jurisdiction to interpret, clarify, amend, and supplement its own orders. The ALJ further found that the Commission had jurisdiction to decide whether the royalty interest created by the pooling orders should bear post-production costs. Finding that the question arose from construction of the pooling order, the ALJ concluded that the Commission was the proper forum for resolution of the question. However, with respect to post-marketing costs, the ALJ found that the issue of whether the royalty interest created by the pooling orders should bear post-production costs was dependent on whether the lease terms, which established the fair market values for minerals in the pooling orders, contained such provisions. The ALJ then found that the remaining issues, *viz.*, whether the lease royalty interests which were utilized to determine fair market value in the pooling orders required royalty interest owners to bear a proportionate part of post-production costs and what share of well proceeds they should receive, were properly pending before the district court. The ALJ concluded that delving into post-production costs "would require the Commission to delve into the Lease Agreements and possibly even the Gas Purchasing and Processing Agreement, which are private agreements." The ALJ then held that the district court had exclusive

jurisdiction to determine what share of proceeds the royalty owners should receive from the well.

¶ 4 New Dominion appealed the ALJ's Report which resulted in the Commission's Referee's Report filed September 19, 2007. The Referee's Report was adopted by the Commission in its final order. The Referee found that the ALJ's Report should be affirmed with respect to the findings of jurisdiction, but "... reversed insofar as he recommended that the District Court determine whether or not the pooled royalty interest owners should bear their part of marketing and post-marketing production costs based upon a collateral attack of the prior pooling orders." The Referee found no merit in the argument that a statutory 1/8 royalty interest created by a pooling order results in a constructive oil and gas interest so as to apply an implied marketing provision to the pooling orders. The Referee found that implied covenants applied in oil and gas leases must arise from negotiated written contracts. He further stated that force-pooled royalty interests, as creatures of the police power of the State, will not have the same treatment in the lawsuit as private royalty interest owners.

¶ 5 "We have held that [52 O.S.2001 § 112] gives the Corporation Commission authority to clarify its orders. The power to clarify a previous order is continuous in nature, and flows from the entry of the original order." *Forest Oil Corporation v. Corporation Commission of Oklahoma*, 1990 OK 58, ¶ 9, 807 P.2d 774, 780.[3] The jurisdiction of the Commission to clarify its orders is undisputed,[4] and the Commission, by its own order, concedes the matter will return to dis-

---

3. 52 O.S.2001 § 112, in part: Any person affected by any legislative or administrative order of the Commission shall have the right at any time to apply to the Commission to repeal, amend, modify, or supplement the same.

4. "When dealing with forced-pooled orders under Oklahoma law, the courts 'have jurisdiction to enforce the Commissions's orders and to resolve the 'private rights' of the parties.' [Citations omitted.] The Commission, on the other hand, has been granted exclusive jurisdiction by

the Oklahoma legislature 'to interpret, clarify, amend and supplement its own orders,' and 'to regulate the conservation of oil and gas and the drilling and operation of oil and gas wells.' [Citations omitted.] This exclusive jurisdiction includes determining whether a party has elected to participate in a forced-pooling order and whether the well drilling costs allocated to participants of a forced-pooled unit are proper and reasonable." *GHK Exploration Company v. Tenneco Oil Company*, 857 F.2d 1388, 1389.

trict court.[5]

¶ 6 Title 52 O.S.2001 § 570.14 states, in part:

A. The district courts within this state shall have the sole and exclusive jurisdiction to determine the entitlement of any owner in a well to:

1. Its share of proceeds from production; or

2. Damages, interest, court costs, attorneys' fees or allowable litigation expenses incurred as a result of the violation of this act.

B. Any rulemaking power granted to the Corporation Commission by the Production Revenue Standards Act [52 O.S.2001 § 570.1 et seq.] shall neither preclude nor impair the right of any owner to obtain through the district courts remedies available under existing law or additional remedies herein granted to any owner injured in business or property by reason of any action in violation of the provisions of the Production Revenue Standards Act.

■■■■ ¶ 7 With respect to reviewing orders of the Commission, "... absent an assertion of a violation of a constitutional right, our review is confined to a determination of whether the Commission exceeded its authority and whether the findings of the Commission are sustained by the law and by substantial evidence. Okla. Const. Art IX, § 20, cl.3." *Inexco Oil Company v. Oklahoma Corporation*, 1988 OK 78, ¶ 4, 767 P.2d 404, 405. "The Commission oversees the conservation of oil and gas; its jurisdiction is limited to the resolution of public rights. Public rights are involved when 'a unitization order, pooling order, or order setting the allowables on the unit's well' affects 'the correlative rights of all mineral rights owners in [a] common source of supply [in a] unit.'" *Tucker v. Special Energy Corporation*, 2008

OK 57, ¶ 9, 187 P.3d 730 (mandate 07/10/08) [citations omitted].

■■■■ ¶ 8 Parks Family contends that the Commission has exceeded its jurisdiction in three respects: (1) it abolished the implied covenant to market; (2) it erroneously relied upon *Sanguine*, an unpublished 1987 Commission order; and (3) the matter is a private dispute and the district court is the proper forum for resolution.

¶ 9 Parks Family's first assertion relates to the Commission's order at paragraphs 14 and 15:

14. There is no merit to Parks' argument that the Commission should treat the statutory royalty interest so as to apply an implied duty to market. Covenants implied in oil and gas leases arise from a negotiated written contract. *Indian Territory Illumination[Illuminating] Oil Co. v. Rosamond*, 190 Okla. 46, 120 P.2d 349 (1941). There is no authority creating a constructive lease between the parties to a pooling order. The relationship created under Commission orders with respect to the 1/8th royalty interest is created by operation of law at the time of issuance of the spacing order combining separate tracts. The spacing order forms the "matrix or glue" for the subsequent framework to which voluntary or forced pooling is applied through the police power of the state. *Helmerich & Payne, Inc. v. Corporation Commission*, 532 P.2d 419 (Okla. 1975); *Amoco Production Co. v. Corporation Commission*, 751 P.2d 203 (Okla.Civ. App.1986)(adopted by Oklahoma Supreme Court, February 9, 1988).

15. There is no merit to Parks' argument that its force-pooled interest should be treated as if it were a royalty interest under a private lease. A force-pooled royalty interest is very different from a lease

5. The Commission ordered: 1. The phrase "normal 1/8 royalty interest as defined in 52 O.S. Section 87.1(e)(1977)" should be clarified as set forth above to permit deduction of post-production costs. Specifically, under the pooling orders at issue, New Dominion may deduct the costs of transportation, treatment, and onsite compression after production to the surface in calculating any royalty owed to Parks or any other royalty interest owner in the wells at issue. 2. Subse-

quent to issuance of this Order, the district court may apply its sole and exclusive jurisdiction to determine the entitlement of any owner in any well involved in this action to (1) its share of proceeds from production, and/or (2) damages, interest, court costs, attorneys' fees or litigation costs as allowed by 52 O.S. § 570 et seq., as well as any other matters falling within its jurisdiction.

royalty interest. The former is created by operation of law through police power of the state, the latter by private contract. *Ward v. Corporation Commission,* 501 P.2d 503 (Okla.1972). The different mechanisms by which these interests are created require different treatment as concerns the payment of marketing and post-production costs. The fact that such treatment may result in the receipt of a different share of proceeds does not result in illegality, but is caused by the application of law based upon the "root" of the interest held by the two differing interest owners.

¶ 10 Parks Family claims that these findings are erroneous in light of 52 O.S.2001 § 87.1(e), (the pooling statute), which provides, in part: "For the purpose of this section, the owner or owners of oil and gas rights in and under an unleased tract of land shall be regarded as a lessee to the extent of a seven-eighths (7/8) interest in and to said rights and a lessor to the extent of the remaining one-eighth (1/8) interest therein." [6] It is Parks Family's position that if they are regarded as in a lessor/lessee relationship, then a constructive lease is also created and the rights attendant thereto, such as implied duty to market.

¶ 11 New Dominion counters that the sole question posed to the Commission was to advise it of what the Commission meant when it provided for payment to Parks Family of the "normal 1/8 royalty interest as defined in 52 O.S. Section 87.1(e)(1977)." In other words, the Application for Clarification of its own order did not require the Commission to perform any statutory construction. We agree.

¶ 12 The Commission stayed within its bounds in defining its order. It clarified for the parties its intent-the phrase "normal 1/8

royalty interest as defined by 52 O.S. Section 87.1(e)(1977)" permits deduction of post-production costs; specifically, under the pooling orders at issue, New Dominion may deduct transportation, treatment, and onsite compression after production to the surface in calculating any royalty owed to Parks Family or other royalty owners in the other wells.

¶ 13 Unless the facts show that its order was not sustained by substantial evidence, this court must affirm the order. *Samson Resources Company v. Oklahoma Corporation Commission,* 1987 OK 73, 742 P.2d 1114.[7] Whether a pooled interest bears post-production costs or not does not appear to raise constitutional issues, but rather an issue within the regularly pursued authority of the Commission. The rights (implied covenant to market) which Oklahoma appellate courts have vested in oil and gas mineral owners have all been based upon a voluntarily engaged lease between the mineral owner and a lessee. While Parks Family cites 52 O.S. § 87.1(e) to describe a pooled relationship as a lessee/lessor relationship-thereby instituting a *constructive lease,* such analysis would require the courts to furnish all of the terms of the imposed, constructive lease, which courts lack the experience and authority to provide. Implied covenants arise from the written lease of the parties, they are not simply created by the Supreme Court as a matter of universal justice.

¶ 14 Parks Family also argues that the matter is a private dispute and thus the district court is the proper forum. It is black-letter law that the Commission, when acting in its adjudicatory role, is a court of record, with limited jurisdiction, and any action it takes must be authorized by statute. Its jurisdiction is limited to resolution of public rights. *Tenneco Oil Company v. El*

---

6. There are amendments to this section subsequent to 1977, but this particular sentence is the same, except for comma placement.

7. "When reviewing the sufficiency of the evidence supporting the Corporation Commission's findings of fact, this Court's review is restricted to determining whether the Commission's findings and conclusions are sustained by the law and substantial evidence. Okla. Const. Art. 9, § 20. Such a review does not include weighing the evidence on appeal, but only determining

whether the supporting evidence possesses substance and relevance. [Citations omitted.] This process does not entail comparing the evidence of parties, but includes determining if the evidence supporting the order furnishes a substantial basis of facts from which the issue could be reasonably resolved. [Citation omitted.]" *Samson Resources Company v. Oklahoma Corporation Commission,* 1987 OK 73, ¶ 11, 742 P.2d 1114, 1116.

*Paso Natural Gas Company,* 1984 OK 52, 687 P.2d 1049. Parks Family argues that the Production Revenue Standards Act, 52 O.S. 2001 § 570.14 vests jurisdiction in the district court because the issue is a question of proper payment of royalty proceeds on oil and gas production and the rulemaking power of the Commission cannot preclude nor impair the right of any owner to obtain remedial relief through the district court. Requesting clarification of the pooling order, however, does not, and did not in the present case, obstruct the royalty owner, from his potential legal or equitable remedies in court. The law provides that the Commission may clarify its orders, so long as it does not attempt to adjudicate private matters in doing so. For instance, a Commission order that attempted to quiet title in a party would exceed its jurisdiction. That is a private matter and only within a district court's jurisdiction. See *Tucker v. Special Energy Corporation,* 2008 OK 57, 187 P.3d 730 (mandate 07/10/08). In the case at bar, the request to the Commission to clarify its order with respect to the meaning of "the normal 1/8th royalty interest" as defined by statute affected the correlative rights of mineral owners and was thus a public right.

¶ 15 The question of whether Parks Family, as a force-pooled royalty interest, should be treated as a royalty interest owner under a private lease has been answered by the Commission, which has exclusive jurisdiction to define and describe the rights of a forced-pooled royalty owner. Neither the district court nor this court has authority to modify the Commission's order to include implied covenants or other obligations. The clarification of its order is within the authority of the Commission, and is sustained by law.

¶ 16 AFFIRMED.

MITCHELL, V.C.J., and BELL, J., concur.

