2012 OK CIV APP 94

**PANOLA INDEPENDENT SCHOOL DISTRICT NO. 4; Michael Kilpatrick, Gwen Grego; Carla Lessel; Thelma Christine Pate; Juanita Golightly; Melody Culberson; and Charlotte Abernathy, on behalf of themselves and all other similarly situated, Plaintiffs/Appellees,**

v.

**UNIT PETROLEUM COMPANY, Defendant/Appellant.**

**No. 107,935.**

Court of Civil Appeals of Oklahoma, Division No. 1.

July 13, 2012.

Certiorari Denied Oct. 8, 2012.

Terry J. Barker, Joseph C. Woltz, Robert N. Lawrence, Pezold Barker & Woltz, Tulsa, Oklahoma, for Plaintiffs/Appellees.

Dennis C. Cameron, Bradley W. Welsh, Mia Vahlberg, GableGotwals, Tulsa, Oklahoma, for Defendant/Appellant.

LARRY JOPLIN, Vice–Chief Judge.

¶ 1 Defendant/Appellant, Unit Petroleum Company (Unit), seeks review of the trial court's order certifying this matter as a class action. We hold Plaintiffs/Appellees (collectively Class Representatives) failed to show a class action is a superior method for adjudicating their claims. Accordingly, we reverse the trial court's order certifying a class.

¶ 2 Class Representatives filed their petition on December 18, 2007 seeking to bring a class action against Unit for underpayment of royalties based on deduction of post-production costs. In this respect, Class Representatives alleged Unit was a lessee and the operator of wells on certain oil and gas drilling and spacing units in Latimer County and other counties in Oklahoma, and Class Representatives owned mineral or royalty interests in the subject units. Class Representatives further alleged Unit, as operator and as a lessee, owed Class Representatives and the putative class members certain duties and obligations, and assumed the lessee's contractual and statutory obligations to pay royalties to each putative class member. Class Representatives asserted Unit improperly reduced the price upon which it paid royalties by deducting improper fees for gathering, compression, fuel use, and marketing, and did not disclose these deductions on the royalty statements sent to Class Representatives and the putative class members.

¶ 3 Unit answered and denied liability. Unit sought a declaratory judgment determining it had complied with all lease provisions. Class Representatives replied to the counterclaim, agreeing there was an actual controversy regarding their claims but denying there was an actual controversy regarding the provisions of the leases.

¶ 4 Class Representatives moved to certify the matter as a class action, and sought to include in the class all royalty and unleased mineral owners in Oklahoma drilling and spacing units in which Unit was a working interest owner or unit operator. Unit objected, arguing (1) individualized issues would predominate, (2) a class action was not a superior method of adjudicating the claims, (3) Class Representatives' claims were not typical, and (4) Class Representatives were not adequate class representatives.

¶ 5 The trial court conducted an evidentiary hearing on the class certification motion in June 2009. The parties then submitted proposed findings of fact and conclusions of law, and the trial court heard closing argument on October 7, 2009.

¶ 6 The trial court entered its order certifying the case as a class action on December 16, 2009, finding Class Representatives had presented sufficient evidence to support the following findings. Unit deducted gathering, compression, fuel use, and dehydration costs from the price it received before remitting royalty to its royalty owners. Its actual sales of gas occur at the mainline sales meters, which are at the tailgate of the gathering system, after the gas is aggregated, compressed, treated, and dehydrated. Unit uses gas from Class Representatives' wells to operate the off-lease gathering, compression, dehydration, and treating equipment. The volume of fuel use is never shown on the royalty owners' check stubs and has never been disclosed to royalty owners. Prior to August 2002, other cost deductions were not shown on the checkstubs.

¶ 7 The trial court also found Unit presented no evidence of individualized issues and admitted that any differences in language of the royalty clauses did not affect whether it took deductions. Unit's policy was that unless a lease specifically prohibited the deduction of off-lease costs for gathering, compression, dehydration, and fuel use, Unit deducted those costs. Class Representatives presented evidence that all the leases in the proposed class were silent as to those costs.

¶ 8 The trial court found Class Representatives' allegations formed a common basis for class claims for breach of the implied covenant to market, breach of fiduciary duty, constructive fraud, breach of contract, unjust enrichment, and breach of good faith and fair dealing. The court found Class Representatives' claims raised common issues of law and fact, the class was sufficiently numerous, Class Representatives would be adequate class representatives, common issues predominated over individual ones, and litigation of the claims by class action was superior to any other method. The trial court defined the class as follows:

> All royalty and unleased mineral owners (except agencies, departments or instrumentalities of the United States of America and persons or entities whom Plaintiffs' counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct) whose minerals were included in a drilling and spacing unit in Oklahoma wherein Unit Petroleum Company and/or its parents, subsidiaries, affiliates, successors or assigns are/were owners of a right to drill and produce oil, gas, and other hydrocarbons from said drilling and spacing unit and/or said drilling and spacing unit is or was operated and/or production therefrom sold and royalty distributed by Unit Petroleum Company, and/or its parents, subsidiaries, successors or assigns. Excluded from the class are the officers and directors of the Defendant, and any entity in which Defendant has a controlling interest, including any entity which is a parent, subsidiary, or affiliate of or is controlled by Defendant, and the legal representatives, heirs, successors, or assigns of any excluded party.

¶ 9 Unit appeals from this order, contending the trial court erred in finding (1) questions of law or fact predominate, (2) the plaintiffs' claims are typical of the class, (3) the plaintiffs are adequate class representatives, and (4) a class action is a superior method for adjudicating the plaintiffs' claims.

¶ 10 In 2009, the Legislature changed the standard of review for orders determining whether an action should be maintained as a class action. Laws 2009, c. 228, § 16. Such an order "shall be subject to a de novo standard of review by any appellate court reviewing the order." 12 O.S.2011 § 2023(C)(2). Therefore, we will review the record and apply the same standard as the trial court in determining whether the action will be maintained as a class action.

¶ 11 Members of a class may sue on behalf of the class if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of those of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. 12 O.S.2011 § 2023(A). In addition, the class representatives must establish one of the alternative conditions of 12 O.S.2011 § 2023(B). In this case, the trial court certified the class based on the third alternative, finding predominance of the common questions of law or fact and superiority of the class action for achieving fair and efficient adjudication of the controversy.

¶ 12 Unit contends Class Representatives failed to show that a class action is a superior method for adjudicating the plaintiffs' claims. We agree.

¶ 13 Class Representatives' claims are based on the lessee's implied duty to market, defined in *Wood v. TXO Production Corp.*, 1992 OK 100, 854 P.2d 880, 882, as the "duty to get the product to the place of sale in marketable form." However, pursuant to *New Dominion, L.L.C. v. Parks Family Co., L.L.C.*, 2008 OK CIV APP 112, 216 P.3d 292, this duty was not owed to all royalty owners. In *New Dominion*, the Court affirmed a Corporation Commission order clarifying its pooling orders to find that the provision granting a "1/8 royalty interest" to force-

pooled, non-participating, working interest owners permitted deduction of post-production costs. The Court reasoned the implied covenant to market arises from the written lease of the parties; therefore, where the royalty interest was created not by a written lease but by a pooling order, no covenant to market arose. *Id.* at ¶ 13, 216 P.3d at 296.

¶ 14 While this appeal was pending, the Legislature amended 52 O.S.Supp.2011 § 87.1(e) to provide that a non-participating owner of unleased mineral interests in a force-pooled tract "shall be considered a lessor, subject to the judicially recognized implied covenant to market." 2012 Okla. Sess. Law Serv. Ch. 201 (H.B. 2654) (emerg. eff. May 8, 2012). Generally, statutes and amendments operate prospectively only, unless the Legislature expresses a contrary intent. *Texas County Irr. and Water Resources Ass'n v. Oklahoma Water Resources Bd.*, 1990 OK 121, 803 P.2d 1119, 1122.

¶ 15 Class Representatives argue this amendment has retroactive effect because it clarified the ambiguous term "lessor" in the prior version of § 87.1. In support, Class Representatives cite *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n*, 1998 OK 113, ¶ 15, 980 P.2d 109, 114, which held *"[w]here an earlier legislative enactment is unclear in some respect and a later enactment attempts to remove the ambiguity, the amendatory statute constitutes a clarifying enactment (footnote) that is to be given retrospective force."* (Emphasis in original, footnotes deleted.)

■ ¶ 16 We are unable to discern any ambiguity in the use of the term "lessor" in § 87.1. Rather than clarifying uncertainty, the amendment served to change existing law by imposing on the operator a duty to market product for the benefit of the non-participating owners of unleased mineral interests in a force-pooled tract. Pursuant to *New Dominion*, this duty did not exist prior to the amendment's effective date. A statutory change that alters the rights or obligations of a party cannot be applied retroactively. *Sudbury v. Deterding*, 2001 OK 10,

19 P.3d 856, 860. Therefore, the amendment may not be given retroactive effect.

■ ¶ 17 While the district court has jurisdiction to enforce the Commission's orders and to resolve the private rights of the parties, the Commission has exclusive jurisdiction to interpret, clarify, amend and supplement its own orders. *New Dominion* at ¶ 5, 216 P.3d at 294 n. 4. This includes the power to define and describe the rights of a force-pooled royalty owner. *Id.* at ¶ 15, 216 P.3d at 297.[1] The class definition as proposed by Class Representatives and certified by the trial court includes force-pooled royalty owners. Not only do the claims of these owners relating to post-production costs differ markedly from the rest of the class, they must be resolved by a different tribunal. We are unable to find a class action is a superior method to adjudicate these claims.

■ ¶ 18 Furthermore, the claims of royalty owners who acquired their interests pursuant to leases require a multiplicity of subclasses. For example, in a lease where royalties are based on gross proceeds, the lessee ordinarily *may not* deduct a proportionate share of transportation, compression, dehydration, and blending costs when such costs are associated with creating a marketable product. However, the lessee *may* deduct such costs upon a showing (1) that the costs enhanced the value of an already marketable product, (2) that such costs are reasonable, and (3) that actual royalty revenues increased in proportion with the costs assessed against the non-working interest. *Mittelstaedt v. Santa Fe Minerals, Inc.*, 1998 OK 7, 954 P.2d 1203, 1205.

¶ 19 Additionally, where the lease bases royalties on market value at the wellhead but there is no actual arm's-length sale at the wellhead, market value at the wellhead may be established by the work-back method, in which allowable costs are subtracted from the first downstream, arms-length sale. *Howell v. Texaco*, 2004 OK 92, 112 P.3d 1154,

1. *See also* 52 O.S.Supp.2012 § 87.1(e) ("Such pooling order of the Commission shall make definite provisions for the payment of cost of the development and operation, which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision. In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties.")

1159. Only the costs incurred after the gas becomes marketable may be charged against the royalty payment. *Id.* at 1160.

¶ 20 Each of these lease types requires a different inquiry in determining the royalty owner's claim for underpayment of royalties based on deduction of post-production costs. Therefore, each lease type would require the definition of a separate sub-class. We are unable to find a class action combining claimants from all lease types is a superior method to adjudicate these claims.

¶ 21 Accordingly, the trial court's order certifying a class is REVERSED.

BUETTNER, P.J., and BELL, J. (sitting by designation), concur.