MOREHEAD v. STATE ex rel. OKLAHOMA HEALTH CARE AUTHORITY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MOREHEAD v. STATE ex rel. OKLAHOMA HEALTH CARE AUTHORITY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MOREHEAD v. STATE ex rel. OKLAHOMA HEALTH CARE AUTHORITY
2018 OK CIV APP 27
415 P.3d 555
Case Number: 115711
Decided: 11/17/2017
Mandate Issued: 04/11/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 27, 415 P.3d 555

 


JOAN ELLEN MOREHEAD, individually and as Personal Representative of the Estate of Henry Andrew Morehead, deceased, and on behalf of all others similarly situated; BETTY RUTH LOVE, individually and as successor in interest to the Estate of Claud H. Love, deceased; and RUTH MAYNARD as Guardian of George O. Taylor, Plaintiffs/Appellees,
v.
STATE OF OKLAHOMA, ex rel. OKLAHOMA HEALTH CARE AUTHORITY, Defendant/Third-Party Plaintiff/Appellant,
and
R. KENNETH KING, ESQ., an individual; SOUTHWEST PROPERTY INVESTMENTS, LLC, an Oklahoma Limited Liability Company; BLUE HORIZON PROPERTIES, LLC, an Oklahoma Limited Liability Company; SOUTHWEST PROPERTY HOLDINGS #1, LLC, an Oklahoma Limited Liability Company; SOUTHWEST PROPERTY HOLDINGS #2, LLC, an Oklahoma Limited Liability Company; SOUTHWEST PROPERTY HOLDINGS #3, LLC, an Oklahoma Limited Liability Company; SOUTHWEST PROPERTY HOLDINGS #4, LLC, an Oklahoma Limited Liability Company; SOUTHWEST PROPERTY HOLDINGS #5, LLC, an Oklahoma Limited Liability Company; SOUTHWEST PROPERTY HOLDINGS #6, LLC, an Oklahoma Limited Liability Company; SOUTHWEST PROPERTY HOLDINGS #7, LLC, an Oklahoma Limited Liability Company; XYZ CORP. 1; XYZ CORP. 2; XYZ CORP. 3; XYZ CORP. 4; XYZ CORP. 5; XYZ CORP. 6; JOHN DOE 1; JOHN DOE 2; JANE DOE 1; JANE DOE 2, Defendants,



STATE OF OKLAHOMA, ex rel. OKLAHOMA DEPARTMENT OF HUMAN SERVICES, Third-Party Defendant.




APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE THAD BALKMAN, JUDGE



REVERSED AND REMANDED



Philip W. Redwine, Douglas B. Cubberley, LAW OFFICES OF REDWINE & CUBBERLEY, Norman, Oklahoma, and
Robert N. Naifeh, Jr., DERRYBERRY & NAIFEH, LLP, Oklahoma City, Oklahoma, for Plaintiffs/Appellees,

Nicole M. Nantois, Susan L. Eads, OKLAHOMA HEALTH CARE AUTHORITY, Oklahoma City, Oklahoma, for Defendant/Third-Party Plaintiff/Appellant State of Oklahoma, ex rel. Oklahoma Health Care Authority,

John J. Dewey, Travis Smith, OKLAHOMA DEPARTMENT OF HUMAN SERVICES, Oklahoma City, Oklahoma, for Third-Party Defendant.




Kenneth L. Buettner, Chief Judge:


¶1 Defendant/Third-Party Plaintiff/Appellant State of Oklahoma, ex rel. Oklahoma Health Care Authority (the OHCA) appeals from the trial court's order granting Plaintiffs/Appellees Joan Ellen Morehead, individually and as Personal Representative of the Estate of Henry Andrew Morehead, deceased, and on behalf of all others similarly situated; Betty Ruth Love, individually and as successor in interest to the Estate of Claud H. Love, deceased; and Ruth Maynard's, as Guardian of George O. Taylor, (collectively, Plaintiffs) motion for class certification. After de novo review, we hold Plaintiffs have failed to demonstrate numerosity for the subclass of all Medicaid recipients who received compensated inpatient nursing home care funded by Medicaid and whose homestead property have been subjected to liens filed by the OHCA, which liens were sold and assigned by the OHCA to third parties, including the representatives, heirs, and devisees, of any such individual (Subclass C). We also hold Plaintiffs have failed to demonstrate they will fairly and adequately protect the interests of the class of Medicaid recipients who received medical assistance for inpatient nursing home care upon whose homestead a Medicaid lien was filed by the OHCA, including their heirs, devisees, and representatives (Subclasses A, B, and C). We reverse the trial court's order granting Plaintiffs' motion for class certification and remand for further proceedings. REVERSED and REMANDED.

¶2 Plaintiffs filed this class action June 22, 2007. Plaintiffs claim the OHCA violated 63 O.S.Supp.1996 § 5051.3 in administering its Medicaid lien program. Medicaid, inter alia, provides inpatient nursing home care to Oklahomans. Individuals who apply for nursing home care under Medicaid must meet certain income and resource limitations to be eligible to receive payments of medical assistance. A homestead is an asset and considered a resource, absent certain exceptions not relevant here. After entering a nursing home funded by Medicaid, an individual has up to one year to dispose of their homestead.[1] The federal government requires states to recoup the cost of inpatient nursing home care by filing claims in the estates of deceased patients or placing pre-death liens on their homesteads. Oklahoma law enables the OHCA to file and enforce pre-death liens against the homesteads of patients who cannot reasonably be expected to be discharged and returned home. See 63 O.S. § 5051.3(A).

¶3 Plaintiffs claim Medicaid liens were filed and calculated in violation of 63 O.S. § 5051.3. Section 5051.3 provides, in pertinent part:



A. Pursuant to the provisions of this section, the Oklahoma Health Care Authority is authorized to file and enforce a lien against the homestead of a recipient for payments of medical assistance made by the Authority to the recipient who is an inpatient of a nursing home if the Authority, upon competent medical testimony, determines the recipient cannot reasonably be expected to be discharged and returned home. A one-year period of compensated inpatient care at a nursing home or nursing homes shall constitute a determination by the Authority that the recipient cannot reasonably be expected to be discharged and returned home.

B. Upon certification for Title XIX of the federal Social Security Act payments for nursing home care, the Authority shall provide written notice to the recipient that:

1. A one-year period of compensated inpatient care at a nursing home or nursing homes shall constitute a determination by the Authority that the recipient cannot reasonably be expected to be discharged and returned home;

2. A lien will be filed against the homestead of the recipient pursuant to the provisions of this section and that the amount of the lien shall be for the amount of assistance paid by the Authority after the expiration of one (1) year from the date the recipient became eligible for compensated inpatient care at a nursing home or nursing homes until the time of the filing of the lien and for any amount paid thereafter for such medical assistance to the recipient; and

3. The recipient is entitled to a hearing with the Authority prior to the filing of the lien pursuant to this section.

The notice shall also contain an explanation of the lien and the effect the lien will have on the ownership of the homestead of the recipient and any other person residing in the homestead. The notice shall be signed by the recipient or the legal guardian of the recipient acknowledging that the recipient or the legal guardian of the recipient understands the notice and the effect that the payment of medical assistance on the recipient's behalf will have upon the homestead of the recipient.

C. The lien filed pursuant to subsection E of this section shall be for the amount of assistance paid beginning one (1) year after the recipient has received inpatient care from a nursing home or nursing homes and has received payment of medical assistance by the Authority until the time of the filing of the lien and for any amount paid thereafter for the medical assistance to the recipient.



63 O.S.Supp.1996 § 5051.3(A)-(C) (emphasis added). Specifically, Plaintiffs claim liens were placed on the homesteads of Medicaid recipients who received less than one year of compensated care in violation of § 5051.3(A). Plaintiffs argue other liens were placed on the homesteads of Medicaid recipients who received more than one year of compensated care, but the lien amounts were calculated to include the costs of the first year of compensated care in violation of § 5051.3(C).[2] Plaintiffs also contend the OHCA failed to provide notice pursuant to § 5051.3(B) and that, since 2004, the OHCA sold and assigned the liens to third parties pursuant to an informal policy without any statutory authority and in violation of the Administrative Procedures Act.

¶4 The lawsuit moved forward sporadically with long periods of inactivity. Plaintiffs filed a Motion for Class Certification November 4, 2013. The trial court dismissed the case for lack of venue May 20, 2014. Plaintiffs appealed. The Court of Civil Appeals, in Case No. 112,946, reversed the trial court's decision and remanded the matter for further proceedings.[3] The trial court had a hearing on Plaintiffs' Motion for Class Certification September 27, 2016. On December 20, 2016, the trial court entered an order granting Plaintiffs' Motion for Class Certification. The trial court certified a class of Medicaid recipients who received medical assistance for inpatient nursing home care upon whose homestead a Medicaid lien was filed by the OHCA, including their heirs, devisees, and representatives. The trial court also certified three subclasses:


A. All Medicaid recipients who received less than twelve (12) months of compensated inpatient nursing home care funded by Medicaid and whose homestead property have been subjected to liens filed by the OHCA, including the representatives, heirs, or devisees, of any such individual ("Subclass A");

B. All Medicaid recipients who received more than twelve (12) months of compensated inpatient nursing home care funded by Medicaid and whose homestead property have been subjected to liens for the first twelve months of compensated care filed by the OHCA, including the representatives, heirs, or devisees, of any such individual ("Subclass B");

C. All Medicaid recipients who received compensated inpatient nursing home care funded by Medicaid and whose homestead property have been subjected to liens filed by the OHCA, which liens were sold and assigned by the OHCA to third parties, including the representatives, heirs, or devisees, of any such individual ("Subclass C").


The trial court also appointed Plaintiffs as class representatives and appointed class counsel. The OHCA appeals.

¶5 Class certification is reviewed de novo. See 12 O.S.Supp.2013 § 2023(C)(2). Under the de novo standard of review, we "review the record and apply the same standard as the trial court in determining whether the action will be maintained as a class action." Panola Indep. Sch. Dist. No. 4 v. Unit Petroleum Co., 2012 OK CIV APP 94, ¶ 10, 287 P.3d 1033.

¶6 Class action lawsuits are governed by 12 O.S. § 2023, which provides, in pertinent part:



A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied, if the petition in the class action contains factual allegations sufficient to demonstrate a plausible claim for relief and:

. . .

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

. . .



12 O.S.Supp.2013 §§ 2023(A)-(B). The Oklahoma Supreme Court has summarized that:



A class may be certified when it satisfies the four requirements of section 2023(A) and one of the requirements of section 2023(B). Subsections 1 through 4 of § 2023(A), respectively, require: 1) numerosity of class members; 2) commonality of questions of law or fact; 3) typicality of claims or defenses of the class representatives with the class; and 4) adequacy of representative parties to protect class interests. Subsections 1 through 3 of § 2023(B) require either: 1) a risk of inconsistent adjudications by separate actions or substantial impairment of non-parties to protect their interests; 2) appropriateness of final injunctive or declaratory relief; or 3) predominance of common questions of law or fact to class members and superiority of class action adjudication. The party seeking certification has the burden of establishing each of the requisite elements.



Cactus Petroleum Corp. v. Chesapeake Operating, Inc., 2009 OK 67, ¶ 10, 222 P.3d 12 (citations and quotations omitted). Here, Plaintiffs sought class certification under § 2023(A) and (B)(2).

¶7 The OHCA argues the Plaintiffs failed to establish the four prerequisites to a class action set forth in § 2023(A). The trial court may, as it did here, divide the class into subclasses. See id § 2023(C)(6). Each subclass is treated as a class. Id.

NUMEROSITY, 12 O.S. § 2023(A)(1)

¶8 Numerosity requires "[t]he class is so numerous that joinder of all members is impracticable." § 2023(A)(1). Plaintiffs assert the class consists of every Medicaid recipient, their heirs, devisees and representatives whose stay in a nursing home or long-care facility caused the OHCA to file a lien on their homestead. As of the filing of the action in 2007, Plaintiffs estimated there were 725 putative class members based on the list of Medicaid liens prepared by the OHCA. The Medicaid lien program director testified that all liens were calculated from the first day of compensated care. In Oklahoma, the numerosity test is satisfied by numbers alone when the size of the class is in the hundreds. See Black Hawk Oil Co. v. Exxon Corp., 1998 OK 70, ¶ 17, 969 P.2d 337. We hold Plaintiffs have satisfied the numerosity requirement of 12 O.S. 2023(A)(1) for Subclass A and Subclass B.

¶9 As for Subclass C, Plaintiffs contend of the 725 liens, 88 of the liens were unlawfully sold and assigned to third parties. However, it is undisputed that 71 of the 88 have been judicially foreclosed resulting in a journal entry of judgment, 14 have been settled with heirs and released, including the lien against Plaintiff Love's property, and one has been voided by the OHCA for reasons not relevant here. Only the two liens against the Morehead and Taylor homesteads remain. The two identified subclass members are the plaintiffs in this lawsuit. Plaintiffs have not produced any other evidence of liens sold or assigned by the OHCA to third parties or evidence of other members of Subclass C. Therefore, it cannot be said the class is so numerous that joinder of all members would be impractical. We hold Plaintiffs have failed to satisfy the numerosity requirements of 12 O.S. § 2023(A)(1) for Subclass C, and the part of the order certifying Subclass C is reversed.

COMMONALITY, 12 O.S. § 2023(A)(2)

¶10 Second, there must be questions of law or fact common to the class. See 12 O.S. § 2023(A)(2). The central issue of whether the OHCA violated 63 O.S. § 5051.3 presents questions of law common to the claims of all class members. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." Ysbrand v. DaimlerChrysler Corp., 2003 OK 17, ¶ 21, 81 P.3d 618. Here, the OHCA's policies and practices of filing and calculating Medicaid liens, which Plaintiffs allege violate Oklahoma law, are the same or similar for each class member. The Oklahoma Supreme Court has also noted that where a lawsuit challenges a practice or policy affecting all putative class members, individual factual differences among the individual litigants will not preclude a finding of commonality. See id.

¶11 The common questions of law for Subclass A are: (1) whether 63 O.S. § 5051.3(A) prohibits the OHCA from filing a lien against the homestead of a Medicaid recipient who has received less than twelve (12) months of inpatient nursing home care and who the OHCA has not otherwise determined cannot reasonably be expected to be discharged and returned home; (2) whether 63 O.S. § 5051.3(C) prohibits the OHCA from filing a lien on a Medicaid recipient's property for the amount of benefits received during the first twelve (12) months of benefits following the date the recipient became eligible for compensated inpatient nursing home care; and (3) whether the OHCA failed to provide notice that complied with 63 O.S. § 5051.3(B). The common questions of law for Subclass B are: (1) whether 63 O.S. § 5051.3(C) prohibits the OHCA from filing a lien on a Medicaid recipient's property for the amount of benefits received during the first twelve (12) months of benefits following the date the recipient became eligible for compensated inpatient nursing home care; and (2) whether the OHCA failed to provide notice that complied with 63 O.S. § 5051.3(B). We hold Plaintiffs have satisfied the commonality requirement of 12 O.S. § 2023(A)(2) for Subclass A and Subclass B.

TYPICALITY, 12 O.S. § 2023(A)(3)

¶12 Third, the claims of the representative parties must be typical of the claims of the class. See 12 O.S. § 2023(A)(3). The OHCA argues the circumstances of each lien will need to be individually analyzed for the timing of the lien placement and the value of the lien, which makes class certification inappropriate.

¶13 The Oklahoma Supreme Court has held, that like commonality, "[t]ypicality does not require that all of the class members have identical claims. If the claims arise from a similar course of conduct by the defendant and share the same legal theory, factual differences in the claims of the class members will not defeat typicality." Cactus Petroleum Corp. v. Chesapeake Operating, Inc., 2009 OK 67, ¶ 11, 222 P.3d 12. Here, the claims arise from a similar course of conduct and all subclass members seek declaratory relief and damages under the same legal theories of liability. Plaintiff Morehead's claims are typical of those in Subclass A. Morehead had not received one year of compensated care when the OHCA filed the lien. He seeks a declaratory judgment that the OHCA violated § 5051.3(A), that notice did not comply with § 5051.3(B), and that the lien filed against the homestead is void. Plaintiffs Love and Maynard's claims are typical of those in Subclass B. The liens were filed after Love and Taylor received one year of compensated care. The lien amounts included the cost of the first year of compensated care.[4] They seek declaratory judgments that the OHCA violated § 5051.3(C), that notice did not comply with § 5051.3(B), and that the liens miscalculated to include the first 12 months of costs are void and should be recalculated. Plaintiffs Love and Maynard also seek damages as a result of the miscalculation. We hold Plaintiffs have satisfied the typicality requirement of 12 O.S. § 2023(A)(3) for Subclass A and Subclass B.

ADEQUACY OF REPRESENTATION, 12 O.S. § 2023(A)(4)

¶14 The fourth prerequisite for class certification is that "[t]he representative parties will fairly and adequately protect the interests of the class." See 12 O.S. § 2023(A)(4). According to the Oklahoma Supreme Court, "[t]his requirement is met when the record demonstrates that the class representatives' interests do not conflict with those of the class and that the class representatives will fully and effectively represent the interests of the class." Ysbrand v. DaimlerChrysler Corp., 2003 OK 17, ¶ 28, 81 P.3d 618. Division II of the Court of Civil Appeals has explained that "[s]atisfaction of the adequate representation element depends on two factors: '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" Martin v. Hanover Direct, Inc., 2006 OK CIV APP 33, ¶ 18, 135 P.3d 251 (quoting Jones v. United Gas Improvement Corp., 68 F.R.D. 1, 21 (E.D. Pa. 1975)).[5]

¶15 The OHCA has not identified any conflict between the interests of the representative for Subclass A and members of the subclass, nor has the OHCA identified any conflict between the interests of the representatives for Subclass B and members of the subclass. Rather, the OHCA contends Plaintiffs will not adequately represent the class, because they have a substantial lack of knowledge about the status of the proceedings and details of the claims and Plaintiffs' counsel is not qualified, as evidenced by the six and one-half years delay in filing the motion for class certification.

¶16 To demonstrate Plaintiffs' lack of knowledge of the claims, the OHCA points to their deposition testimony. Plaintiff Morehead testified that she did not understand a class action concerned more than her family's claims. Plaintiff Maynard testified that she did not know what a class action was or that she was a plaintiff in a class action. On the other hand, Plaintiff Love's deposition reveals she had an understanding of her claims and that she was representing others, as well. Plaintiffs respond that their knowledge of the case is of little importance to whether they will adequately represent the interests of the class and that, as long as they know something about the case, it should be certified.

¶17 As for the qualifications of Plaintiffs' counsel, the OHCA argues that not vigorously prosecuting the action on behalf of the class by, unexplainably, not filing a motion for class certification for six and one-half years demonstrates that Plaintiffs and their counsel will not fairly and adequately protect the interests of the class. Furthermore, the OHCA argues that, pursuant to 12 O.S. § 2023(F),[6] the trial court is required to undertake a specific inquiry prior to appointing class counsel, and that the trial court failed to make such inquiry. Plaintiffs respond that the OHCA failed to challenge counsel's qualifications before the trial court and, therefore, the issue has been waived on appeal. While Plaintiffs acknowledge that a proper class representative "will pursue a resolution of the controversy with the requisite vigor and in the interest of the class," Peil v. Nat'l Semiconductor Corp., 86 F.R.D. 357, 366 (E.D. Pa. 1980), that adequacy of counsel is part of the court's analyses under § 2023(A)(4) and § 2023(F), and that the trial court's order is subject to de novo review, they do not respond to the OHCA's arguments or offer a reason or excuse for the six and one-half years delay.

¶18 Additionally, the OHCA argues the trial court failed to certify as soon as practicable, as required by 12 O.S. § 2023(C)(1). The OHCA contends that nearly a decade passed before the trial court granted Plaintiffs' belated motion for certification and, as a result, the OHCA has been prejudiced. The OHCA argues this will create obstacles for class discovery. The putative class members are elderly, vulnerable, and commonly have memory problems. Many putative class members have died. Furthermore, there have been significant staff changes in the OHCA and Third-Party Defendant Oklahoma Department of Human Services, the state agency that determines Medicaid eligibility. The OHCA has continued to file liens while this case languished, which has created considerably more potential class members. The OHCA argues the trial court order violates 12 O.S. § 2023(C)(1) and should be reversed. Plaintiffs argue the OHCA failed to raise this issue before the trial court and, therefore, it has been waived on appeal. Plaintiffs do not respond to the OHCA's legal arguments.

¶19 Title 12, § 2023(C)(1) provides, in pertinent part, that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Two fundamental policies are behind 12 O.S. § 2023(C)(1) and the federal equivalent, Fed. R. Civ. P. 23(C)(1):



The first is that defendants are entitled to ascertain at the earliest practicable moment whether they will be facing a limited number of known, identifiable plaintiffs or whether they will instead be facing a much larger mass of generally unknown plaintiffs. Fundamental fairness, as well as the orderly administration of justice requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages. That is particularly true where, as here, the defendants were facing either thirty-nine named plaintiffs or a class of almost two hundred times the number of the original plaintiffs. Second, these rules foster the interests of judicial efficiency, as well as the interests of the parties, by encouraging courts to proceed to the merits of a controversy as soon as practicable. That, at bottom, is a matter of simple justice. As previously described, plaintiffs' three-year delay in moving for class certification indisputably thwarted these policies.



McCarthy v. Kleindienst, 741 F.2d 1406, 1411-12 (D.C. Cir. 1984).[7] Courts have noted that Rule 23(C)(1) of the Federal Rules of Civil Procedure does not impose upon a plaintiff the additional burden of ensuring that the district court adheres to the rule. See Senter v. General Motors Corp., 532 F.2d 511, 520-21 (6th Cir. 1976). Rather, "the trial court is obligated to take up class action status whether requested to do so or not by a party or parties where it is an element of the case." Horn v. Associated Wholesale Grocers, Inc., 555 F.2d 270, 274 (10th Cir. 1977); see Trevizo v. Adams, 455 F.3d 1155, 1161 (10th Cir. 2006).

¶20 Section 2023(C)(1) does not create an independent basis for denying class certification. See Trevizo, 455 F.3d at 1161; but see Sterling v. Envtl.. Control Bd. of City of New York, 793 F.2d 52, 58 (2d Cir. 1986). However, the United States Supreme Court and federal courts have generally analyzed a party's delay in moving for class certification as part of the adequacy of representation requirement under Fed. R. Civ. P. 23(A)(4). See East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 404-05 (1977); Trevizo, 455 F.3d at 1161, n.4; Andrews v. Bechtel Power Corp., 780 F.2d 124, 131 (1st Cir. 1985); McCarthy v. Kleindienst, 741 F.2d 1406, 1411-12 (D.C. Cir. 1984); McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 558-59 (5th Cir. 1981); Yapuna v. Global Horizons Manpower Inc., 254 F.R.D. 407, 412 (E.D. Wash. 2008); Dudo v. Schaffer, 91 F.R.D. 128, 136 (E.D. Pa. 1981); In re Folding Carton Antitrust Litig., 88 F.R.D. 211, 214-15 (N.D. Ill. 1980); Lyon v. State of Ariz., 80 F.R.D. 665, 667 (D. Ariz. 1978); Walker v. Columbia Univ., 62 F.R.D. 63, 64-65 (S.D.N.Y. 1973). A significant delay in seeking class certification is a strong indication that plaintiffs are not fairly and adequately representing the interests of the absent class.[8] See Lyon, 80 F.R.D. at 667. The United States Supreme Court observed that "the named plaintiffs' failure to protect the interests of class members by moving for certification surely bears strongly on the adequacy of the representation that those class members might expect to receive." East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 405 (1977). We agree with these courts that the untimeliness or delay in filing a motion for class certification should be considered in the court's analysis of whether the plaintiff will fairly and adequately represent the interests of the class. The delay between filing the petition and moving for class certification bears separately on the questions whether the plaintiff will adequately protect the interests of the class, 12 O.S. § 2023(A)(4), and whether class counsel will adequately represent the interests of the class, 12 O.S. § 2023(F)(4).

¶21 Here, nearly six and one-half years passed between Plaintiffs filing their petition and filing a motion for class certification. Plaintiffs filed a motion for class certification only after being prompted by the trial court. On September 24, 2013, after one year of no activity in the case, the trial court issued notice of disposition docket. At the hearing October 24, 2013, the trial court allowed the case to stay open noting that Plaintiffs were to file a motion for class certification within ten days. Courts have dismissed class actions or denied class certification for failure to demonstrate that the plaintiffs will fairly and adequately represent the interests of the class, as required by Fed. R. Civ. P. 23(A)(4), based on much shorter delays in moving for class certification. See, e.g., Andrews, 780 F.2d at 129 (four years); McCarthy, 741 F.2d at 1411 (three years); McGowan, 659 F.2d at 558-59 (two years); Dudo, 91 F.R.D. at 136 (eleven and one-half months); Folding Carton, 88 F.R.D. at 214 (four years since filing complaint and two and one-half years since denial of first motion for class certification); Lyon, 80 F.R.D. at 667 (three years). The order certifying the class was not entered until December 20, 2016. For nearly a decade, the OHCA was uncertain as to whether it would be facing three named plaintiffs or a much larger class. When the petition was filed in 2007, the putative class had 725 members. Now, the parties estimate the class size has doubled. The delay has made the OHCA's task of collecting and producing evidence related to the broad class more difficult and prejudices their case. Furthermore, the delay undercuts the judicial efficiency class actions are designed to achieve. Based on the six and one-half years delay in moving for class certification and Plaintiffs Morehead and Maynard's lack of knowledge of their responsibilities as class representatives, we hold Plaintiffs have failed to satisfy the adequacy of representation requirement of 12 O.S. § 2023(A)(4) for Subclass A and Subclass B.[9] We also note the record does not reflect that the trial court made the necessary § 2023(F) inquiry prior to appointing class counsel. We reverse the trial court's order granting Plaintiffs' motion for class certification and remand for further proceedings.

12 O.S. § 2023(B)(2)

¶22 In addition to satisfying the four prerequisites for class certification under § 2023(A), a plaintiff must also satisfy one of the requirements of § 2023(B). The trial court found that § 2023(B)(2) applies. The OHCA argues Plaintiffs failed to demonstrate that class certification is appropriate under 12 O.S. § 2023(B)(2). Because we hold Plaintiffs' motion for class certification should be denied based on 12 O.S. § 2023(A)(4), we need not and will not decide whether class certification is appropriate under § 2023(B)(2).


¶23 REVERSED AND REMANDED.



MITCHELL, P.J., and SWINTON, J., concur.



FOOTNOTES


[1] This permits an individual to return to the homestead if he or she experiences improved health within one year of entering a nursing home.



[2] The statute has since been amended to include the first 12 months of costs. See 63 O.S.Supp.2015 § 5051.3(C) (Amended by Laws 2017, SB 819, c. 255, § 1) (effective Nov. 1, 2017).



[3] Mandate issued March 7, 2016.



[4] The lien against the Love homestead allegedly includes $21,972.80 for the first year of compensated care. The lien against the Taylor homestead allegedly includes $33,838.00 for the first year of compensated care.



[5] Federal courts have also considered counsel's qualifications, competency, and conflicts in determining whether the plaintiffs will adequately protect the interests of the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998); see Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002); Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir.1975).



[6] Title 12, § 2023(F) provides, in pertinent part:

F. CLASS COUNSEL. 1. Unless a statute provides otherwise, a court that certifies a class shall appoint class counsel. In appointing class counsel after November 1, 2009, the court:

a. shall consider:

(1) the work counsel has done in identifying or investigating potential claims in the action,

(2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action,

(3) counsel's knowledge of the applicable law, and

(4) the resources that counsel will commit to representing the class,

b. may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class,

c. may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees or nontaxable costs,

d. may include in the appointing order provisions about the award of attorney fees or nontaxable costs, and

e. may make further orders in connection with the appointment;

2. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under paragraphs 1 and 4 of this subsection. If more than one adequate applicant seeks appointment, the court shall appoint the applicant best able to represent the interests of the class.

3. The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

4. Class counsel shall fairly and adequately represent the interests of the class.

12 O.S.Supp.2013 § 2023(F).



[7] Because Oklahoma's class action scheme closely parallels that provided in the Federal Rules of Civil Procedure, we may look to federal authority for guidance regarding its rationale. See KMC Leasing, Inc. v. Rockwell-Standard Corp., 2000 OK 51, ¶ 9, 9 P.3d 683.



[8] "Federal courts are not reticent to deny class certification motions where class representatives and their counsel are not diligent. This is so even where local rules do not seek to manage class certification with deadlines for filing a certification motion." Browning v. Angelfish Swim School, Inc., 1 So. 3d 355, 363-64 (Fla. Dist Ct. App. 2009) (Shepherd, J., concurring in part and dissenting in part). In an effort to implement the policy of Fed. R. Civ. P. 23(C)(1), several federal district courts have adopted local rules requiring plaintiffs in class actions to file a motion for class certification within 60 or 90 days of filing the complaint. Oklahoma district courts have not adopted such a rule.



[9] Even if Plaintiffs satisfied the numerosity requirement for Subclass C, they failed to satisfy the adequacy of representation requirement.









 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 33, 135 P.3d 251, MARTIN v. HANOVER DIRECT, INC.
Discussed
 2012 OK CIV APP 94, 287 P.3d 1033, PANOLA INDEPENDENT SCHOOL DIST. NO. 4 v. UNIT PETROLEUM CO
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2003 OK 17, 81 P.3d 618, YSBRAND v. DAIMLERCHRYSLER CORP.
Discussed at Length
 2009 OK 67, 222 P.3d 12, CACTUS PETROLEUM CORP. v. CHESAPEAKE OPERATING, INC.
Discussed at Length
 1998 OK 70, 969 P.2d 337, 69 OBJ 2501, Black Hawk Oil Co. v. Exxon
Discussed
 2000 OK 51, 9 P.3d 683, 71 OBJ 1763, KMC Leasing Inc. v. Rockwell-Standard Corp.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2023, Class Actions
Discussed at Length
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 5051.3, Filing and Enforcement of Homestead Lien for Medical Assistance Payments
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA